HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IMEG CONSULTANTS CORP., a foreign corporation, f/k/a The Rushing Company, LLC; | CASE NO. 2:24-cv-01916-RAJ |
| Plaintiff, | ORDER |
| v. | |
| DELTA E CONSULTING, LLC, a domestic limited liability company; and DOES 1–10, individuals; | |
| Defendants. | |

## I.    INTRODUCTION

THIS MATTER comes before the Court on Defendant Delta E Consulting, LLC ("Defendant" or "Delta E")'s Motion to Dismiss.  Dkt. # 18.  Plaintiff IMEG Consultants Corp. ("Plaintiff" or "IMEG") filed a Response to Delta E's Motion, to which Delta E replied.  Dkt. ## 19, 20.

For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Delta E's Motion to Dismiss.

## II.    BACKGROUND

This is a trade secrets action arising out of the formation of Delta E, a mechanical, engineering, and plumbing ("MEP") design consulting firm created in 2023 that competes

ORDER – 1

with IMEG for bids on subcontracting projects.  All facts are as alleged in IMEG's Complaint.

IMEG is the successor to The Rushing Company ("Rushing"), a Seattle-based engineering entity that specialized in MEP solutions. Dkt. # 1 at ¶ 12.  Rushing developed a proprietary and confidential library of tools, formulae, and modeling information to facilitate the generation of detailed design and engineering plans amenable to the needs of its customers.  *Id*. at ¶ 13.  The main technology in question is computer models of certain modular components for use in "Revit models," which Rushing would modify as needed to generate drawings for project-specific components such as heaters, water pumps, and risers.  *Id*.  Rushing generated pertinent data for its projects using computer spreadsheets to calculate physical, electrical, and other specifications for HVAC and plumbing systems. *Id*.  IMEG refers to the Revit models and spreadsheets collectively as "Proprietary Engineering Information."  *Id.* at ¶ 14.

In May 2024, Rushing merged with IMEG, and IMEG, as the surviving entity, acquired all rights, title, and interest in Rushing's Proprietary Engineering Information.  *Id.* at ¶¶ 10, 14.  IMEG identifies its trade secrets as "the Proprietary Engineering Information, which comprises a compilation of electronic Revit models, a compilation of drawing templates, and calculation spreadsheets used to generate MEP drawings, specifications, and other planning documents."  *Id.* at ¶ 40.  Former members of Rushing created Delta E in late 2023, and Delta E now competes with IMEG and has hired several former Rushing employees.  *Id.* at ¶¶ 2, 19.

IMEG alleges that Delta E misappropriated IMEG's Proprietary Engineering Information in relation to two projects: one in Seattle's Little Saigon neighborhood and the other at the University of Washington's Haggett Hall dormitory.  Specifically, IMEG states that because Delta E used IMEG's Proprietary Engineering Information, "Delta E was awarded the subcontract for the Little Saigon project, and IMEG was not."  *Id.* at ¶ 32.  As for the Haggett Hall project, IMEG alleges that Delta E's use of this information caused

ORDER – 2

the contractor to terminate its relationship with IMEG after IMEG completed a 50% milestone in designing project deliverables, and that Delta E subsequently generated materials for the contractor that "bear a striking resemblance to the planning documents IMEG had completed as of the 50% benchmark." *Id.* at ¶¶ 33–35.

IMEG proceeded to file suit against Delta E, asserting causes of action for (1) violation of the federal Defend Trade Secrets Act ("DTSA"), (2) violation of the Washington Uniform Trade Secrets Act ("WUTSA"), (3) tortious interference with business expectancy, (4) conversion, (5) unjust enrichment, and (6) common law unfair competition. *Id.* at ¶¶ 39–91. Delta E now moves to dismiss IMEG's Complaint for failure to a state a claim upon which relief may be granted. Dkt. # 18.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

ORDER – 3

## IV.  DISCUSSION

### A.    DTSA and WUTSA Claims

Delta E first moves to dismiss IMEG's DTSA and WUTSA claims, collectively referred to as the "trade secret misappropriation" claims.  Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1).  A trade secret is protectable if "the owner has taken reasonable measures to keep the information secret" and "the information derives independent economic value" from not being known or readily ascertainable.  18 U.S.C. § 1839(3)(A–B).  The WUTSA defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process" that "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  RCW 19.108.010(4).

This District has evaluated DTSA and WUTSA claims under a similar standard. *See Philips N. Am., LLC v. Summit Imaging Inc.*, No. 2:19-cv-1745-JLR, 2020 WL 1515624, at * 5 (W.D. Wash. Mar. 30, 2020) (finding that the DTSA and WUTSA provide nearly identical definitions of a "trade secret").[1]  To allege trade secret misappropriation, a plaintiff must sufficiently identify the alleged trade secrets to state a plausible claim for relief and survive a motion to dismiss.  *Dig. Mentor, Inc. v. Ovivo USA, LLC*, No. 2:17-cv-1935-RAJ, 2018 WL 6724765, at *7 (W.D. Wash. Dec. 21, 2018).  The plaintiff must also provide sufficient particularity to identify what trade secrets another party allegedly misappropriated beyond prior disclosure in patents or other public disclosures.  *Aqua-Lung*

---

[1] IMEG concurs with the legal standard set forth in Delta E's Motion to Dismiss. Dkt. # 19 at 5 ("[a]t a high level, Defendants accurately characterized the Defend Trade Secrets Act ("DTSA") and the Washington Uniform Trade Secrets Act ("WUTSA") sufficient for purposes of deciding the instant Motion.").

*Am., Inc. v. Am. Underwater Prods., Inc.*, 709 F. Supp. 773, 788 (N.D. Cal. 2010).

The Court first turns to an issue that it has previously recognized as "a tension often present in trade secret litigation." *T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1193 (W.D. Wash. 2015). The Court elucidated the following:

> A plaintiff looking to take unfair advantage of the UTSA might plead trade secret misappropriation without doing anything to identify what its trade secrets are. If allowed to proceed to discovery on such a flimsy basis, the plaintiff could not only burden the defendant with the task of responding to broad discovery requests, but could also identify its trade secrets after the fact by tailoring its identification of trade secrets to the discovery it receives. On the other hand, because it is the defendant who knows what is misappropriated, a plaintiff should not be compelled to divulge with specificity all of its possible trade secrets (especially not to a defendant who it believes has already misappropriated at least one of them) in order to proceed to discovery.

*Id*. Here, IMEG's Complaint defines the trade secrets at issue with sufficient specificity to survive a motion to dismiss. The compilation of electronic Revit models, compilation of drawing templates, and calculation spreadsheets that Rushing used to generate MEP drawings, specifications and other planning documents are, as IMEG states, specific electronic files created by Rushing.

The facts in the cases cited by Delta E offer far less detail than does IMEG in the instant matter, as the cases refer to vague and general catchall categories that would likely trigger a fishing expedition in discovery. For example, in *Digital Mentor*, the plaintiff identified the trade secrets as "inside knowledge of novel designs" of its service, including "revolutionary processes; a detailed and comprehensive algorithm; modules developed for the mobile software computing platform; and other key information." 2018 WL 6724765, at *8. As IMEG aptly posits, the trade secrets at issue here are not broadly described "processes," but rather identifiable electronic files that Rushing maintained as confidential, including the Revit models, which are specific types of computer design models. Dkt. # 19 at 7. Each case in Delta E's Motion contains generalized terms like "proprietary

ORDER – 5

formulas," "business process," and "pricing information."  Dkt. # 18 at 7–9.

The Court acknowledges the argument set forth in Delta E's Reply that the factual background deemed adequate to plead trade secret misappropriation in *T-Mobile* offers more detail than does IMEG.  However, IMEG nonetheless offers more than the aforementioned catchall terms that would not survive a motion to dismiss.  Delta E believes IMEG must identify the specific files it considers trade secrets.  Doing so would highlight the discovery tension explained, *supra*, and tip the balance in Delta E's favor.  IMEG should not be compelled to divulge with specificity all of its trade secrets to proceed to discovery, especially because it claims Delta E has misappropriated them.  *See T-Mobile USA, Inc.*, 115 F. Supp. 3d at 1184; *Silver Fern Chem., Inc. v. Lyons*, No. 2:23-cv-775-TL, 2023 WL 8775478, at *6 (W.D. Wash. Dec. 19, 2023) ("it is ordinarily sufficient for a plaintiff to provide descriptions of the categories of the asserted trade secrets in a complaint.").

Although the Court will allow IMEG's DTSA and WUTSA claims to proceed, it will not grant IMEG an unfettered license to seek broad and extensive documents in discovery.  Discovery must be narrowly tailored and proportional to the needs of the case. More instruction on this directive will be present in the forthcoming order on IMEG's Motion for Expedited Discovery.  Dkt. # 3.

The Court **DENIES** Delta E's Motion to Dismiss IMEG's claims for trade secret misappropriation.

### B.    Conversion, Unjust Enrichment, and Unfair Competition Claims

The Court summarily dismisses IMEG's claims for conversion, unjust enrichment, and common law unfair competition.  The WUTSA "displaces conflicting tort, restitutionary, and other law of this state pertaining to civil liability for misappropriation of a trade secret."  RCW 19.108.900.  Accordingly, when the elements of a common law claim do not require some allegation or factual showing beyond those required for a trade secrets claim, the trade secrets claim preempts the overlapping common law claims.  *See,*

ORDER – 6

*e.g., SEIU Healthcare Nw. Training P'ship v. Evergreen Freedom Found.*, 5 Wn. App. 2d 496, 427 P.3d 688 (2018). "If the UTSA has abolished a cause of action [,] then that cause of action cannot be plead [sic] at all, including in the alternative." *LaFrance Corp. v. Werttemberger*, No. 2:07-cv-1932-TSZ, 2008 WL 5068653, at *2 (W.D. Wash. Nov. 24, 2008). Because IMEG's claims for conversion, unjust enrichment, and unfair competition derive from the same elements as its two trade secrets claims, namely Delta E's misappropriation of IMEG's alleged trade secrets, the WUTSA preempts them, and an amended pleading cannot cure this deficiency.

The Court **GRANTS** Delta E's Motion to Dismiss IMEG's claims for conversion, unjust enrichment, and common law unfair competition.

### C.    Tortious Interference Claim

Finally, Delta E moves to dismiss IMEG's claim for tortious interference with a business expectancy. To assert such a claim, IMEG must show (1) the existence of a valid . . . business expectancy, (2) that Delta E had knowledge of that [expectancy], (3) an intentional interference inducing or causing a breach or termination of the . . . expectancy, (4) that defendants interfered for an improper purpose or used improper means, and (5) resultant damage. *Leingang v. Pierce Cnty. Med. Bureau*, 131 Wn. 2d 133, 157, 930 P.2d 288 (1997).

IMEG claims tortious interference in relation to the Little Saigon project and the Haggett Hall project. The Court adopts the reasoning set forth in Delta E's Reply concerning the Little Saigon and Haggett Hall bids. IMEG states that because Delta E used IMEG's Proprietary Engineering Information, "Delta E was awarded the subcontract for the Little Saigon project, and IMEG was not." Dkt. # 1 at ¶ 32. The Complaint further alleges that IMEG "had valid business expectancies in securing work on the Little Saigon landmark project." *Id.* at ¶ 68. Although IMEG's Response indicates that it "alleged that it bid on a project, had a valid expectancy in securing that business, and, but for Delta E's wrongful conduct, it would have earned that business," the Complaint does not include an

ORDER – 7

allegation that IMEG bid on the project.  Dkt. # 19 at 12.  Even if the Complaint contained this allegation, the tortious interference claim would likely fall short nonetheless, as a bid on a public contract does not automatically create a valid business expectancy.  *See United States ex rel. Savage v. Washington Closure Hanford LLC*, 2:10-cv-5051-EFS, 2015 WL 5825966, at * 4 (E.D. Wash. Oct. 6, 2015).  A plaintiff pleading tortious interference with a business expectancy must show "that its future business opportunities are a reasonable expectation and not merely wishful thinking."  *Greensun Grp., LLC v. City of Bellevue*, 7 Wn. App. 2d 754, 769, 436 P.3d 397 (2019) (internal quotation marks and citation omitted); *see HTP, Inc. v. First Merit Grp. Holdings, Inc.*, 2:21-cv-732-BJR, 2023 WL 2138344, at *6 (W.D. Wash. Aug. 6, 2021) (ruling that a valid business expectancy may exist when there is an allegation of a tentative agreement).  IMEG fails to allege why it expected to receive the Little Saigon bid or the remainder of the Haggett Hall subcontract.  It also does not allege a tentative agreement concerning either project.

To cinch the matter, IMEG's tortious interference claim fails under the third element listed in *Leingang*, as it does not show how Delta E's conduct *caused* IMEG's loss of the two projects.  The Court will grant IMEG leave to amend its tortious interference claim, as additional facts may demonstrate why it expected to receive the subcontracts and how Delta E contributed to any alleged loss.

The Court **GRANTS** Delta E's Motion to Dismiss IMEG's claim for tortious interference but will permit IMEG to file an amended pleading and rectify the identified deficiencies.

///
///
///
///
///
///

ORDER – 8

## V.     CONCLUSION

Based on the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss.  Dkt. # 18.  Plaintiff's claims for conversion, unjust enrichment, and common law unfair competition are **DISMISSED WITH PREJUDICE**. Plaintiff's claim for tortious interference is **DISMISSED WITHOUT PREJUDICE**. Plaintiff has twenty-one (21) days to file an amended complaint if it so chooses.  Failure to do so will result in that specific claim being dismissed with prejudice.


Dated this 12th day of May, 2025.


The Honorable Richard A. Jones
United States District Judge

ORDER – 9